IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | | |
|---|---|---|
| **A & T EXPRESS, LLC** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 2:23-cv-85-HSO-BWR** |
| | § | |
| | § | |
| **TOWN OF PRENTISS** | § | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION [15] FOR JUDGMENT ON THE PLEADINGS

THIS MATTER is before the Court on Defendant Town of Prentiss's ("Defendant") Motion [15] for Judgment on the Pleadings.  Having considered the pleadings, the record, the parties' submissions, and relevant legal authority, the Court finds that Defendant's Motion [15] should be granted in part and denied in part, in that Defendant should be granted judgment on the pleadings on all of Plaintiff A & T Express's ("Plaintiff") claims except its procedural due process claims under the United States and Mississippi Constitutions; those claims will proceed.

## I. BACKGROUND

Plaintiff, a Mississippi limited liability company, alleges in its Complaint [1] that it owns property located in the Town of Prentiss in Jefferson Davis County, Mississippi.  Compl. [1] at 1.  The land is "[a] parcel of land situated in the SW ¼ of the SE ¼ of Section 1, Township 7 North, Range 19 West, Town of Prentiss, Jefferson Davis County, Mississippi, being Lots 9 through 17 of the Subdivision of

Tyrone Housing Development and unplatted lands."[1]  *Id.*  "Plaintiff became the owner of the above-described property by Substituted Trustee's Deed executed on September 26, 2018 and recorded on October 16, 2018 in Book 250 at Page 682."  *Id.* at 2; *see* Ex. [1-2].  "Plaintiff had a building and other structures" on the property, and "prior to [the] purchase the buildings were operated as a convenience store with fuel pumps."  Compl. [1] at 2.

Plaintiff claims that, on September 21, 2021, Defendant began condemnation proceedings against its property under Mississippi Code Annotated § 21-19-11, *see id.* at 3, which provides the process by which "a governing authority of any municipality" may "determine whether property or parcel of land located within a municipality is in such a state of uncleanliness as to be a menace to the public health, safety and welfare of the community," Miss. Code Ann. § 21-19-11(1).  The statute requires that

> [n]otice shall be provided to the property owner by:
>
> (a) United States mail two (2) weeks before the date of the hearing mailed to the address of the subject property, except where the land or structure(s) is apparently vacant, and to the address where the ad valorem tax notice for such property is sent by the office charged with collecting ad valorem tax; and
>
> (b) Posting notice for at least two (2) weeks before the date of a hearing on the property or parcel of land alleged to be in need of cleaning and at city hall or another place in the municipality where such notices are posted.

Miss. Code Ann. § 21-19-11(1).

---

[1] The Complaint [1] contains a full legal description, *see* Compl. [1] at 1, that appears to be taken from a Substituted Trustee's Deed, *see* Ex. [1-2] at 1.

Plaintiff asserts that, "[o]n September 30, 2021, Defendant mailed a certified letter intend[ed] for Plaintiff['s] property that a hearing [pursuant to Mississippi Code Annotated § 21-19-11] was going to occur on October 19, 2021." Compl. [1] at 3. But "Tarun Arora, Plaintiff's Managing Member, did not receive notice of this letter; nor, was the letter addressed to Plaintiff or Mr. Arora as Managing Member." *Id.* Instead, "Defendant gave notice to" two individuals named "Sanjay Kumar and Ashok Vig." *Id.* Plaintiff has attached a copy of the notice as an exhibit to the Complaint [1], and it contains a certified mail receipt indicating the notice was sent on September 30, 2021, to "Sanjay Kumar [and] Ashok Vig" at a Bassfield, Mississippi address. Ex. [1-5]. Plaintiff claims that it "did not see a Notice posted on the property as required by law." Compl. [1] at 3.

According to the Complaint [1], "Defendant had a hearing [in] which [it] declared the property to be a menace," but "[n]o agent(s) of the Plaintiff attended the hearing since proper and legal notice was not sent [to] or received by Plaintiff." *Id.* Defendant subsequently "removed the entire structure or building from the property" and "left only the concrete slab on which the store was erected." *Id.* at 4. At some later date, "Plaintiff discovered [its] store had been removed from the land," then "went to City Hall," where "an agent for the Defendant stated that she had not gotten the letter back from the post office." *Id.* According to Plaintiff, "[a]t no time did anyone from the Defendant contact the Plaintiff about cleanliness issues with the property," and "Plaintiff's property has been destroyed without

sufficient legal notice unto Plaintiff." *Id.*  Further, Plaintiff alleges that "[t]here are a number of dilapidated properties in Prentiss, Mississippi." *Id.*

The Complaint [1] advances claims against Defendant for damages pursuant to 42 U.S.C. § 1983 for an unconstitutional deprivation of property without due process, without just compensation, and in violation of Plaintiff's substantive due process rights. *See id.* at 4–5.  Plaintiff further asserts that "[t]he taking and destruction without due compensation of the property was a violation of the Plaintiff's rights under Article 3 Section 14 and Article 3 Section 17 of the Mississippi Constitution," and seeks compensatory, consequential, and punitive damages. *See id.* at 5–6.

Defendant's Answer [7] to the Complaint [1] admits the allegations that Defendant held a hearing under Mississippi Code Annotated § 21-19-11 resulting in a declaration that Plaintiff's property was a menace, and that Defendant removed the entire structure or building from the property.  *See* Ans. [7] at 5 (admitting the allegations contained in paragraph 10, the first sentence of paragraph 15, and paragraph 17 of the Complaint [1]).  Defendant subsequently filed the present Motion [15] for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), asserting—among other things—that the property was properly condemned as a nuisance, and that, consistent with the Fourteenth Amendment, Defendant properly attempted to provide notice. *See* Mot. [15]; Mem. [16] at 1, 9–10.  Plaintiff has filed a Response [20], Mem. [21], and Defendant a Reply [23].

## II. <u>DISCUSSION</u>

A.   <u>Federal Rule of Civil Procedure 12(c)</u>

A motion under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015).  "In considering a motion for judgment on the pleadings under Rule 12(c), the court is generally limited to the contents of the pleadings, including attachments thereto." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015) (quotations and citations omitted).

To decide a Rule 12(c) motion, a court applies the same standard as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Hale v. Metrex Rsch. Corp.*, 963 F.3d 424, 427 (5th Cir. 2020).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (quoting *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017)).  A claim must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While a court must accept all well-pleaded facts as true and view those facts in the light most favorable to the claimant, *Varela v. Gonzales,* 773 F.3d 704, 707 (5th Cir. 2014) (citations omitted), a claimant must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

B.   <u>Municipal liability under 42 U.S.C. § 1983</u>

"Local governing bodies," such as Defendant, "can be sued directly under [42 U.S.C.] § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) (footnote omitted).  Although municipalities "may not be sued under § 1983 for an injury inflicted solely by its employees or agents" under a theory of respondeat superior, they can be sued "when execution of [their] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible [for] under § 1983." *Id.* at 694.  To clear *Monell*, a plaintiff must establish that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017).

"The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).  To that end, "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Id.* at 480.  So, "[a]n unconstitutional policy may be found when a policymaker performs the specific act

6

that forms the basis of the § 1983 claim." *Davidson*, 848 F.3d at 395 (citing

*Pembaur*, 475 U.S. at 480) (other citations omitted); *see also Anderson v. City of*

*McComb, Miss.*, 539 F. App'x 385, 388 n.2 (5th Cir. 2013) ("When the policymakers

are the violators, no further proof of municipal policy or custom is required." (citing

*Pembaur*, 475 U.S. at 481)).

　　Here, Defendant asserts that Plaintiff has not sufficiently alleged that it can

be liable under *Monell*.  *See* Mem. [16] at 12–14.  Defendant contends that, in order

to establish municipal liability for a single decision by a policymaker, "Plaintiff

must show (1) that an official policymaker (2) committed the specific act resulting in

the alleged violation."  *Id.* at 12 (citing *Webb v. Town of St. Joseph*, 925 F.3d 209,

215 (5th Cir. 2019)).[2]

　　But here, the notice of condemnation hearing—which Plaintiff attached as an

exhibit to the Complaint [1], and which it alleges Defendant mailed to the wrong

individuals—plainly demonstrates that the decision to hold a hearing on whether to

condemn Plaintiff's property under Mississippi Code Annotated § 21-19-11 was

made at a public hearing of the Mayor and the Board of Alderman of the Town of

Prentiss.  *See* Ex. [1-5].  At that hearing, "[t]he Mayor and Board of Alderman

---

[2] Defendant asserts in its Reply [23] that Plaintiff, by failing to brief *Monell*, waived the issue.  *See* Reply [23] at 6 (citing *Magee v. Bank of N.Y. Mellon Corp.*, 2023 WL 4568780, at *3 (S.D. Miss. July 17, 2023) ("[T]he failure to raise an argument in response to a motion to dismiss operates as a waiver of such argument.")); *see also* Mem. [21] (not discussing *Monell*).  But Plaintiff's Response Memorandum [21] repeatedly argues that the Town of Prentiss itself, after providing inadequate notice, decided to condemn the property.  *See* Mem. [21].  The Court is not persuaded that Plaintiff intentionally relinquished any assertion that Defendant can be liable under *Monell* and its progeny simply by not expressly referencing *Monell* when the substance of its argument implicates *Monell*. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (discussing how "waiver is the intentional relinquishment or abandonment of a known right" (quotation omitted)).

[would] discuss . . . condemning [the] property." *Id.*  The Town of Prentiss's Board minutes, attached to Defendant's Answer [7], clarify that the Mayor and the Board of Alderman decided to move forward with a condemnation hearing against Plaintiff's property.  *See* Ex. [7-3].  Were there any room for doubt that condemnation of Plaintiff's property was an "act[] of the *municipality* . . . for which the municipality is actually responsible," *Pembaur*, 475 U.S. at 479, the Condemned Property Sign, Ex. [7-4], states, "The Town of Prentiss has CONDEMNED this property on Tuesday, October 19, 2021[,]" Ex. [7-4].  Because the Town of Prentiss's Mayor and Board of Alderman made official decisions that the Town would condemn Plaintiff's property, the Court cannot conclude, at least at this early pleading stage, that Plaintiff's claims are barred under *Monell*.  *See Monell*, 436 U.S. at 690; *Davidson*, 848 F.3d at 395 (citing *Pembaur*, 475 U.S. at 480) (other citations omitted); *Anderson*, 539 F. App'x at 388 n.2 (citing *Pembaur*, 475 U.S. at 481).  The Court therefore turns to the merits of Plaintiff's claims.

C.    Plaintiff's federal procedural due process claim

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The Fourteenth Amendment's Due Process Clause provides "a guarantee of fair procedure."  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  In a § 1983 claim based upon procedural due process such as Plaintiff's, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an

interest *without due process of law*." *Id.* "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citing *Zinermon*, 494 U.S. at 125). Defendant does not contend that Plaintiff has failed to sufficiently allege the first element, that its protected interest in property was taken, *see* Mem. [16], so the Court will proceed to the second element—that is, what process was due Plaintiff, *see Cuellar v. Tex. Emp. Comm'n*, 825 F.2d 930, 934 (5th Cir. 1987) ("Once it is determined that due process applies, the question remains what process is due.") (cleaned up).

The issue in this case is the adequacy of notice Defendant provided to Plaintiff before it demolished the property. *See* Compl. [1]; Mem. [16]. When the government must provide notice of a proceeding that will extinguish a party's property rights, "due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The government must provide notice in a manner that reflects that it was "desirous of actually informing the absentee" of the proceeding against it, *Mullane*, 339 U.S. at 315, and "assessing the adequacy of a particular form of notice requires balancing the 'interest of the State' against 'the individual interest sought to be protected by the Fourteenth Amendment,'" *Jones*, 547 U.S. at 229 (quoting *Mullane*, 339 U.S. at 314).

But "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Id.* at 226.  The Supreme Court has found notice constitutionally sufficient in cases when "the government attempted to provide notice and heard nothing back indicating that anything had gone awry" because "'[t]he reasonableness and hence the constitutional validity of [the] chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected.'" *Id.* (quoting *Mullane*, 339 U.S. at 315) (citing *Dusenbery v. United States*, 534 U.S. 161, 170 (2002)) (alterations in original).  And "the failure of notice in a specific case does not establish the inadequacy of the attempted notice; in that sense, the constitutionality of a particular procedure for notice is assessed ex ante, rather than post hoc." *Id.* at 231.

Still, "regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case," notice is inadequate when the government merely follows a statutory scheme despite knowing that the scheme would not provide meaningful notice to the intended recipient. *Id.* at 230.  In *Jones*, the Court concluded that sending notice of an impending tax sale by certified mail was insufficient given the state became aware that the notice was returned as unclaimed, and the Court did "not think that a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed." *Id.* at 229.

*Jones* also discussed the principle "that the State can assume an owner leaves his property in the hands of one who will inform him if his interest is in

jeopardy." *Id.* at 233 (citing *Mullane*, 339 U.S. at 316).  For example, "'libel of a ship, attachment of a chattel[,] or entry upon real estate in the name of law'" involve "'seiz[ures]' of property" that "'may reasonably be expected to come promptly to the owner's attention.'" *Id.* (quoting *Mullane*, 339 U.S. at 316) (alterations in original). But *Jones* rejected an argument that certified mail sent to a home and addressed to its owner satisfied due process where the homeowner had moved out of the home after separating from his wife, who still resided there at the time.[3] *See id.* "An occupant" of a home, the Court reasoned, "is not charged with acting as the owner's agent in all respects" and "cannot call for a certified letter without first obtaining the owner's signature." *Id.* Further, "it would by no means be obvious to an occupant observing a certified mail slip from the [government] that the owner is in danger of losing his property." *Id.*; *see also id.* at 235 ("Occupants who might disregard a certified mail slip not addressed to them are less likely to ignore posted notice, and a letter addressed to them (even as 'occupant') might be opened and read.").

Here, Plaintiff's claim is premised on Defendant mailing notice of a condemnation hearing addressed to the wrong individuals. *See* Compl. [1] at 3 (alleging that "Defendant gave notice to Sanjay Kumar and Ashok Vig not the Plaintiff," and that "Tarun Arora, Plaintiff's Managing Member, did not receive notice of this letter; nor, was the letter addressed to Plaintiff or Mr. Arora as

---

[3] The Court pointed out, however, that due process did not require the government to have searched for his new address in a local phonebook or other government records because "[a]n open-ended search for a new address" would impose an unnecessary burden on the government. *Id.* at 236.

Managing Member"). Plaintiff also asserts that it "did not see a Notice posted on the property as required by law." *Id.* So, "[n]o agent(s) of the Plaintiff attended the [condemnation] hearing since proper and legal notice was not sent [to] or received by Plaintiff." *Id.*

Defendant argues in support of its Motion [15] that "Plaintiff cannot demonstrate a violation of its federal due process rights by claiming that the Town did not comply with a state law notice statute," or by alleging that "it did not receive actual notice" of the condemnation hearing. Mem. [16] at 9. Instead, Defendant contends, "state deprivations of property merely require notice 'reasonably calculated, under all the circumstances, to apprise [the] interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 9–10 (quoting *Dusenbery*, 534 U.S. at 168) (other citations omitted) (alteration in original). Defendant asserts that it sent a letter—the content of which was adequate to provide notice of the condemnation hearing—to the "correct address," albeit "to the wrong addressee." *Id.* at 10. By "correct address," Defendant means that the letter was not returned as undeliverable. *See id.* & n.23 (citing Compl. [1] at 4 ("Plaintiff went to City Hall and an agent for the Defendant stated that she had not gotten the letter back from the post office.")).[4] Defendant further asserts that it posted notice on Plaintiff's property, citing pictures of the property with condemnation notices posted to windows and walls, "[i]mmediately" after the

---

[4] The notice was addressed to "Sanjay Kumar + Ashok Vig" at 5562 N. Williamsburg Rd, Bassfield, MS 39421. Ex. [1-5]. A Jefferson Davis County Real Property Tax Notice for Tax Year 2021 that Plaintiff attached to its Complaint [1] as an exhibit is addressed to "A & T Express LLC" at 5562 N. Williamsburg Rd, Bassfield, MS 39421. Ex. [1-4].

October 19, 2021, condemnation hearing.  *See id.* at 4, 10 (citing Ex. [7-1] at 8–11, 17).

As a threshold matter, the Court agrees with Defendant that Plaintiff cannot establish a Fourteenth Amendment due process claim based only upon a violation of Mississippi Code Annotated § 21-19-11.  "Although a state or local entity may have failed to comply with statutory notice requirements, 'this state law violation does not also amount to a violation of federal due process.'" *Lee v. City of Pascagoula, Jackson Cnty., Mississippi*, No. 1:23CV63-LG-RPM, 2023 WL 8654932, at *5 (S.D. Miss. Dec. 14, 2023) (quoting *Dearman v. Stone Cnty. Sch. Dist.*, 832 F.3d 577, 584 (5th Cir. 2016)).  "[U]nless the conduct trespasses on federal constitutional safeguards, there is no [federal] constitutional deprivation." *Id.* (quoting *Levitt v. Univ. of Texas at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985)) (alterations in original).

But, based on the pleadings alone, the Court cannot agree at this early stage that mailing notice addressed to Sanjay Kumar and Ashok Vig satisfied the Fourteenth Amendment.  Neither party has explained who these individuals are or how or whether they are related to Plaintiff or the matters giving rise to this case. *See* Compl. [1] and attachments thereto; Ans. [7] and attachments thereto; Mot. [15]; Mem. [16]; Mem. [21]; Reply [23].  At this stage of the proceedings, the Court must accept all well-pleaded facts in the Complaint [1] as true and view those facts in the light most favorable to Plaintiff.  *Varela*, 773 F.3d 707.  Viewing the pleadings and attachments thereto in that manner, *Bosarge*, 796 F.3d at 440, the

Court cannot conclude that mailing notice addressed to individuals without a defined relationship to Plaintiff satisfied the notice requirement of due process, *see Jones*, 547 U.S. at 230–32.  And although this case does not involve notice by mail returned to the sender, *Jones* emphasized that the person to whom notice by certified mail is addressed is relevant when considering whether the notice satisfied due process.  *See id.* at 233.

The Court is also not prepared at this early stage to conclude that posting notices on Plaintiff's property after the condemnation hearing was constitutionally sufficient.  As a matter of common sense, notice posted after the Town condemned the property would not be sufficient to provide Plaintiff "an opportunity to present [its] objections" at the condemnation hearing.  *Id.* at 226 (quoting *Mullane*, 339 U.S. at 314); *see* Miss. Code Ann. § 21-19-11(1).  Indeed, "the root requirement of the Due Process Clause [is] that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quotation and citation omitted).  Defendant does not explain—nor is it obvious to the Court on the present record—why Plaintiff did not have a right to be heard *before* the Town condemned its property.  *See* Mem. [16]; Reply [23].  The Court therefore concludes that Defendant has not established that it is entitled to judgment on the pleadings on this claim.

D.    Plaintiff's federal takings claim

The Takings Clause of the Fifth Amendment, which is "applicable to the States through the Fourteenth Amendment," *Cedar Point Nursey v. Hassid*, 594

14

U.S. 139, 147 (2021), provides: "[N]or shall private property be taken for public use, without just compensation," U.S. Const. amend. V.  Takings claims are cognizable as to both personal property, including goods, and real property.  *Horne v. Dep't of Agriculture*, 576 U.S. 350, 358 (2015).  A taking can be per se or regulatory, both of which entitle the property owner to just compensation.  *Cedar Point Nursey*, 594 U.S. at 147–49.  A per se taking occurs "[w]hen the government physically acquires private property for a public use," including "when the government physically takes possession of property without acquiring title to it."  *Id.* at 147.

A regulatory taking occurs when the regulation "goes too far" in limiting an owner's use of her property.  *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).  The Supreme Court has held that a regulation that deprives a property owner of "*all* economically beneficial uses" of her property constitutes a regulatory taking for which just compensation is owed.  *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019–20 (1992) (finding a regulatory taking, and thus requiring just compensation, when enforcement of a "coastal-zone construction ban" rendered beachfront property "valueless").  But compensation is not owed, even for a total deprivation, when the regulation causing such a deprivation "inhere[s] in the title itself" or "in the restrictions that background principles of the State's law of property and nuisance already place upon land ownership," including those "by the State under its . . . power to abate nuisances that affect the public generally."  *Id.* at 1029.

Defendant contends that Plaintiff has not alleged sufficient facts to plausibly plead that its removal of the property pursuant to Mississippi Code Annotated § 21-19-11 was anything other than a constitutionally permissible proceeding against property that constituted a nuisance.  *See* Mem. [16] at 6–7 (citing *Lucas*, 505 U.S. at 1029).  Plaintiff hardly responds to this argument at all, and instead asserts, under the heading "Takings Clause of the Fifth Amendment," that "Defendant failed to provide Plaintiff with adequate notice."  Mem. [21] at 6.

The Court agrees with Defendant that Plaintiff's Complaint [1] alleges nothing "more than labels and conclusions" about its takings claim, which are not sufficient to survive a Rule 12(c) motion.  *Twombly*, 550 U.S. at 555.  The Complaint [1] asserts that Plaintiff's property was taken under Mississippi Code Annotated § 21-19-11 without proper notice but does not allege any constitutional deficiency in Mississippi Code Annotated § 21-19-11 or any facts that would permit the Court to conclude that Plaintiff's property was not "dilapidated" pursuant to the statute.  *See* Compl. [1].  The Court therefore concludes that Defendant's Motion [15] should be granted as to Plaintiff's takings claim.

E.    Plaintiff's federal substantive due process claim

The Supreme Court has "emphasized time and again that the touchstone of due process is protection of the individual against arbitrary action of government," and the Due Process Clause protects against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (cleaned up).  This

16

doctrine, known as substantive due process, "limits what the government may do in both its legislative, and its executive capacities." *Id.* (citations omitted). "To prevail on a substantive due process claim, [the plaintiff] must first establish that it held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies." *Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 249–50 (5th Cir. 2000). As discussed above, Defendant does not argue that Plaintiff has failed to allege a protected property right under the Due Process Clause. *See* Mem. [16].

In evaluating a substantive due process claim, the Court next asks whether the deprivation of the Plaintiff's protected interest was "rationally related to a legitimate governmental interest." *Simi Inv. Co.*, 236 F.3d at 251. "The question is only whether a rational relationship exists between the [policy] and a conceivable legitimate objective. If the question is at least debatable, there is no substantive due process violation." *Id.* (quotation omitted) (alteration in original). The government cannot justify its action by merely asserting "an irrational basis for an otherwise arbitrary decision." *Shelton v. City of Coll. Station*, 780 F.2d 475, 483 (5th Cir. 1986). Importantly, "the due process clause does not require a state to implement its own law correctly, and accordingly a violation of state law is alone insufficient to state a constitutional claim under the Fourteenth Amendment." *Lee*, 2023 WL 8654932, at *6 (alteration removed) (citing *G & H Dev., L.L.C. v. Benton-Par. Metro. Plan. Comm'n*, 641 F. App'x 354, 358 (5th Cir. 2016) (quoting *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996))).

The Court first turns to Defendant's argument that Plaintiff's substantive due process claim is subsumed by its takings claim because both claims assert the same protection against government action. *See* Mem. [16] at 10–11; Reply [23] at 4–6. When a plaintiff asserts both a takings claim and a substantive due process claim arising out of the deprivation of a property right, "a careful analysis must be undertaken to assess the extent to which [the] plaintiff's substantive due process claim rests on protections that are also afforded by the Takings Clause," because substantive due process cannot be used to, in effect, expand the scope of the Takings Clause. *John Corp. v. City of Houston*, 214 F.3d 573, 583 (5th Cir. 2000). So, the Court must ask whether Plaintiff's "allegations are 'simply a takings claim under a substantive due process label.'" *Mangal v. City of Pascagoula, Jackson Cnty., MS*, 426 F. Supp. 3d 274, 283 (S.D. Miss. 2019) (quoting *Steward v. City of New Orleans*, 537 F. App'x 552, 556 (5th Cir. 2013)).

Plaintiff asserts that "[t]here are a number of dilapidated properties in Prentiss, Mississippi," Compl. [1] at 4, and that "Defendant arbitrarily and capriciously deprived the Plaintiff of its property right" because it "arbitrarily selected the Plaintiff's building to demolish," Mem. [21] at 11. This is sufficient to plausibly establish that Plaintiff's substantive due process claim is not wholly subsumed by its takings claim. *See John Corp.*, 214 F.3d at 583. Whereas the point of a takings claim is that the plaintiff was owed just compensation, *see* U.S. Const. amend. V, Plaintiff's substantive due process theory is that Defendant arbitrarily

18

enforced Mississippi Code Annotated § 21-19-11 against it, *see* Compl. [1] at 4, Mem. [21] at 11.

But the Court ultimately agrees with Defendant that Plaintiff's Complaint [1] fails to state a viable substantive due process claim.  *See* Mem. [16] at 11–12; Reply [23] at 5–6.  The Complaint [1] contains one line of factual support for an independent substantive due process claim: that "[t]here are a number of dilapidated properties in Prentiss, Mississippi."  Compl. [1] at 4.  Plaintiff does not purport to claim that its property was not in fact dilapidated within the meaning of Mississippi Code Annotated § 21-19-11, or that the statute is not, in general, "rationally related to a legitimate governmental interest."  *Simi Inv. Co.*, 236 F.3d at 251; *see* Compl. [1]; Mem. [21].  Nor does the Complaint [1] allege any facts beyond the existence of other dilapidated buildings in Prentiss, Mississippi, that would "allow[] the court to draw the reasonable inference that the defendant" acted arbitrarily in enforcing Mississippi Code Annotated § 21-19-11 against Plaintiff's property.  *Iqbal*, 556 U.S. at 678; *see* Compl. [1].

The mere fact that other dilapidated buildings exist in the Town of Prentiss does not by itself render its proceedings against Plaintiff's property arbitrary to the point of violating the Fourteenth Amendment; Defendant could not be expected to proceed against every dilapidated building at one time.  *See Simi Inv. Co.*, 236 F.3d at 251.  In other words, Plaintiff's substantive due process claim is stated in terms of conclusory labels, which is insufficient.  *See Twombly*, 550 U.S. at 555 (discussing how plausibly stating a claim requires alleging "more than labels and conclusions,

19

and [how] a formulaic recitation of the elements of a cause of action will not do").
Likewise, even if Plaintiff had alleged in the Complaint [1] what it argued in its
Memorandum—that Defendant "arbitrarily selected the Plaintiff's building to
demolish," Mem. [21] at 11—the use of the term "arbitrarily" to describe
Defendant's decision to proceed against its property would still be insufficient to
state a plausible claim for a violation of substantive due process, *see Twombly*, 550
U.S. at 555.  Defendant's decision to bring a condemnation proceeding against one
of many dilapidated buildings in the Town of Prentiss, without more facts alleged
about the Town's decision, "is not so arbitrary so as to shock the conscience." *Marco
Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 672 n.3 (5th Cir. 2007)
(quotation omitted).  Accordingly, the Court concludes that Defendant's Motion [15]
should be granted as to Plaintiff's federal substantive due process claim.

F.     <u>State constitutional claims and the Mississippi Torts Claims Act</u>

The Court turns to Plaintiff's procedural and substantive due process claims
under Article III, § 14 of the Mississippi Constitution, the state's Due Process
Clause; and its takings claim under Article III, § 17 of the Mississippi Constitution,
the state's Takings Clause.  *See* Compl. [1] at 5.  Defendant raises a threshold
argument that Plaintiff "wholly failed to comply" with the Mississippi Tort Claims
Act, Mississippi Code Annotated § 11-46-1, *et seq.* ("MTCA").  *See* Mem. [16] at 14–
17.  The MTCA "define[s] the parameters for sovereign immunity within this state."
*Jones v. Mississippi Institutions of Higher Learning*, 264 So. 3d 9, 23 (Miss. Ct. App.
2018) (quoting *City of Jackson v. Estate of Stewart ex rel. Womack*, 908 So. 2d 703,

709 (Miss. 2005)).  The statute "provides a limited waiver of sovereign immunity," *id.* at 26 (citing Miss. Code Ann. § 11-46-5), and includes a provision requiring that a plaintiff who intends to sue a governmental entity "file a notice of claim with [its] chief executive officer" at least ninety days before bringing suit, Miss Code Ann. § 11-46-11(1).

While the MTCA "provides immunity for '[a] governmental entity and its employees acting within the course and scope of their employment or duties . . . [a]rising out of a legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature[,]'" *City of Jackson v. Jordan*, 202 So. 3d 199, 205 (Miss. 2016) (quoting Miss. Code Ann. § 11-46-9(1)(a)) (alterations in original), "sovereign immunity will not protect the political subdivision when there has been a violation by the subdivision of an individual's constitutional rights," *id.* (quoting *Tucker v. Hinds Cnty.*, 558 So. 2d 869, 872 (Miss. 1990)).  "[T]o allow the sovereign immunity defense to block suits based on [the due process] provision[] of the Mississippi Constitution would render [that provision] meaningless."  *Id.* (quoting *Tucker*, 558 So. 2d at 872 (citing *Williams v. Walley*, 295 So. 2d 286, 288 (Miss. 1974))) (alterations in original).  *Jordan* accordingly held that the MTCA does not apply to a plaintiff's due process claim against a municipality for failing to provide sufficient notice before a condemnation under Mississippi Code Annotated § 21-19-11.  *See id.* at 201, 205; *accord Moton v. City of Clarksdale*, 367 So. 3d 979, 983–84 (Miss. 2023) (discussing how the plaintiff's "claims alleging a violation of his right to free speech, deprivation of substantive due process, and a violation of his

21

right to equal protection under the law do not fall within the ambit of the Mississippi Tort Claims Act" (citing *Jordan¸* 202 So. 3d at 205)).  This Court must follow *Jordan*.  *See Huddleston v. Dwyer*, 322 U.S. 232, 236–37 (1944) (explaining that "[i]t is the duty of the federal appellate courts, as well as the trial court, to ascertain and apply the state law where, as in this case, it controls [the] decision," and that a "decision of the highest court of a state on matters of state law [is] in general conclusive upon" federal courts).

Proceeding to the merits of Plaintiff's state-law claims, the Court finds that Plaintiff's procedural due process claim under Mississippi's Due Process Clause should not be dismissed at this stage.  "Though the two are worded differently, [the federal and Mississippi Due Process Clauses] have been found to contain the same guarantee."  *Tucker*, 558 So. 2d at 873.  Accordingly, the Court finds that Plaintiff's procedural due process claim founded in the Mississippi Constitution should not be dismissed under Rule 12(c) for the same reasons described *supra* in Part II.C.

Plaintiff's claim under Mississippi's Takings Clause, however, should be dismissed.  Plaintiff does not contest that the same public nuisance doctrine applicable under the federal Takings Clause applies to Mississippi's Takings Clause.  *See* Mem. [21] at 11 ("The Plaintiff agrees with the Defendant insofar as the claims for both federal and state constitutional due process and takings are essentially the same.  Thus, Plaintiff requests that the Court view the constitutional claims together.").  Given this concession by Plaintiff, the Could finds that its Mississippi takings claim should be dismissed for the same reasons

discussed in Part II.D., *supra*.  Further, considering Plaintiff's concession that its Mississippi Constitutional claims should be considered together with its federal claims, *see* Mem. [21] at 11, the Court finds that Plaintiff's substantive due process claim under the Mississippi Due Process Clause should likewise be dismissed for the reasons discussed in Part II.E., *supra*.

G.    Punitive damages

Defendant has also moved for judgment on the pleadings on Plaintiff's claim for punitive damages.  Mem. [16] at 18.  It argues that, "[b]ecause the Town is immune from such damages, Plaintiff's claim for punitive damages must be dismissed, even if any other claims could survive."  *Id.*  As to Plaintiff's federal claims, the United States Supreme Court has held "that a municipality is immune from punitive damages under 42 U.S.C. § 1983."  *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981); *accord Mitchell v. City of New Orleans*, 184 F. Supp. 3d 360, 378 (E.D. La. 2016) ("In *City of Newport v. Fact Concerts, Inc.*, the Supreme Court squarely held that municipalities are immune from punitive damages under § 1983." (citing *Newport*, 453 U.S. at 271)).  Defendant is thus entitled to dismissal of any claim for punitive damages under federal law.

Turning to Plaintiff's remaining due process claim under the Mississippi Constitution, as discussed above, the Court's obligation is to faithfully apply the decisions of the Mississippi Supreme Court.  *See Huddleston*, 322 U.S. at 236–37; *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Under this doctrine, the Court must

> examine Mississippi law to determine whether any final decisions of the
> Mississippi Supreme Court are dispositive.  If there is no apposite
> decision, this court must forecast how the Mississippi Supreme Court
> would rule.  This prediction may be based on Mississippi case law, dicta,
> general rules on the issue, decisions of other states, and secondary
> sources.  If there is no evidence to the contrary, this court will presume
> a Mississippi court would adopt the prevailing rule if the case was before
> it.

*Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 392 (5th Cir. 2009)

(quotations and citations omitted).  The "task is to attempt to predict state law, not

to create or modify it."  *Keen v. Miller Envtl. Group, Inc.*, 702 F.3d 239, 243 (5th Cir.

2012) (quotation omitted).

> The Mississippi Supreme Court has explained:
>
> > Punitive damages are to punish a wrong-doer.  In the case of a . . .
> > governmental entity . . . , the "punished" is the taxpayer, as it is their
> > funds that pay the damages, or the insurance coverage for such
> > damages.  With that in mind, litigants should not be allowed to obtain
> > punitive damages from the public treasury which is filled only by
> > taxpayers.

*Sw. Mississippi Reg'l Med. Ctr. v. Lawrence*, 684 So. 2d 1257, 1267 (Miss. 1996).

Accordingly, the Court is of the view that the Mississippi Supreme Court would not

permit a plaintiff to recover punitive damages from a governmental entity, whether

the MTCA is applicable or not.  *See Keen*, 702 F.3d at 243.  Plaintiff's claims for

punitive damages will therefore be dismissed.

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant

Town of Prentiss's Motion [15] for Judgment on the Pleadings is **GRANTED IN**

**PART**, in that Plaintiff A & T Express's claims under the federal Takings Clause

and the Mississippi Takings Clause, its federal and state substantive due process

claims, and its claim for punitive damages under federal and state law, are **DISMISSED WITH PREJUDICE**.

      **IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant's Motion [15] for Judgment on the Pleadings is **DENIED IN PART** as to Plaintiff's procedural due process claims under the United States and Mississippi Constitutions.

      **SO ORDERED AND ADJUDGED**, this the 6th day of September, 2024.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE